UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENERAL MEDICINE, P.C.,

    Plaintiff,

v.

SECRETARY OF U.S. DEPT. OF
HEALTH AND HUMAN SERVICES,

    Defendant.
_____/

Case No. 17-cv-10090
Hon. Matthew F. Leitman

## **OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF #26)**

In this action, Plaintiff General Medicine, P.C., seeks judicial review of a decision from the Medicare Appeals Council (the "MAC"). That decision affirmed, in large part, the denial or downcoding of certain claims General Medicine submitted to Medicare for payment. (*See* Compl., ECF #1.) On October 30, 2017, General Medicine filed a motion for summary judgment in which it seeks a remand of this action to Defendant Secretary of Health of Human Services (the "Secretary") with instructions that the Secretary consider additional evidence that support its billings. (*See* ECF #26.) For the reasons that follow, General Medicine's motion is **DENIED**.

**I**

General Medicine provides medical services to Medicare recipients who reside at nursing homes and other long-term care facilities. (*See* Affidavit of General

1

Medicine Senior Medical Director Thomas M. Prose at ¶1, ECF #32-1 at Pg. ID 5855.) General Medicine's "physicians and nurse practitioners see Medicare recipients exclusively in the facilities where they reside." (Mot., ECF #26 at Pg. ID 5464.) Most of the medical records generated from these treatments remain "in the possession of and under the control of the[se] facilit[ies]." (Prose Aff. at ¶4, ECF #32-1 at Pg. ID 5656.)

In 2013, General Medicine treated certain Medicare recipients who lived at a facility called The Anderson, located in Cincinnati, Ohio. (*See id.* at ¶7, Pg. ID 5657.) General Medicine then submitted bills for these services to Medicare through CGS Administrator, LLC, a Medicare administration contractor.

In April 2013, CGS informed General Medicine that "it needed additional medical records to support the billings." (*Id.* at ¶9, Pg. ID 5857.) General Medicine only had partial records in its possession, so, on April 15, 2013, it requested the relevant medical records in writing from The Anderson. (*See* id. at ¶10, Pg. ID 5857.) While General Medicine was awaiting The Anderson's reply to that request, CGS asked General Medicine to provide additional records supporting its billings for patients treated at The Anderson. (*See id.* at ¶11, Pg. ID 5857.) General Medicine requested those additional records in writing from The Anderson as well. (*See id.*)

The Anderson did not respond to General Medicine's requests. But General Medicine did not conduct any substantial follow-up with the Anderson at that time.

Instead, General Medicine sent the limited records it did have in its possession to CGS. (*See id.* at ¶12, Pg. ID 5857.)

"Based on the limited records [CGS] received, [it] denied or downcoded[1] 223 of [General Medicine's] billings" for treatment provided to Medicare patients at The Anderson. (Mot., ECF #26 at Pg. ID 5465; *see also* Prose Aff. at ¶16, ECF #32-1 at Pg. ID 5858.) On September 12, 2013, General Medicine filed a request for reconsideration with CGS. (*See* Mot., ECF #26 at Pg. ID 5465; Prose Aff. at ¶¶ 17-18, ECF #32-1 at Pg. ID 5858.) CGS denied that request. (*See id.*)

The next level of administrative review available to General Medicine at that time was an appeal to a Medicare Qualified Independent Contractor (the "QIC"). In March 2014, as the deadline for filing its appeal with the QIC approached, General medicine "called The Anderson … [in order to] obtain more medical records" to submit to the QIC. (Prose Aff. at ¶22, ECF #32-1 at Pg. ID 5859.) The Anderson did not return that phone call, and there is no evidence in the record that General Medicine then followed up with a second call or request for the records in writing. (*See id.* at ¶23, Pg. ID 5859.) Instead, General Medicine filed its appeal with the QIC with the limited records it had.

---

[1] When a claim is downcoded, Medicare agrees to pay for the treatment provided, but at a lower level of service than what was originally billed.

3

On June 4, 2014, the QIC issued a partially favorable decision on General Medicine's appeal. (*See id.* at ¶24, Pg. ID 5859.) The QIC determined that some of the initially-denied claims for services provided to patients at The Anderson should be paid (though at a downcoded level of service), but the QIC affirmed the decision denying the remainder of the claims. (*See id.*)

After General Medicine received this ruling, it "called The Anderson again, and this time" it finally received the relevant records. (*Id.* at ¶25, Pg. ID 5859.) General Medicine then provided those records to a valuation firm, ValueScope. (*See id.* at ¶27, Pg. ID 5860.) ValueScope prepared a report that evaluated the records against the QIC's decision. (*See id.*) In that report, ValueScope "set forth the grounds for [General Medicine's] disagreement with the findings of the QIC," and it provided reasons that Medicare should have paid General Medicine's bills in full. (Mot., ECF #26 at Pg. ID 5476.)

On August 4, 2014, with the relevant medical records for the patients at The Anderson now in hand, General Medicine took the next step in the administrative appeals process – requesting a hearing before an Administrative Law Judge (an "ALJ"). (*See id.* at Pg. ID 5465.) However, the applicable statutes and regulations governing this step of General Medicine's appeal prohibited General Medicine from presenting the newly-obtained medical records to the ALJ unless it could show good cause for failing to present them to the QIC. *See* 42 U.S.C. § 1395ff(b)(3); 42 C.F.R.

4

§ 405.966 (2016). In an attempt to comply with these provisions and to secure the opportunity to present the newly-obtained records to the ALJ, General Medicine submitted a statement of good cause explaining that it did not submit the records to the QIC because, during the QIC review, the records were in the sole possession and control of The Anderson. (*See* Mot., ECF #26 at Pg. ID 5465-66.) At this same time, General Medicine also submitted the Valuescope report in an effort to show that the newly-obtained documents demonstrated the propriety of the billings in question. (*See id.*; *see also id.* at Pg. ID 5476.)

After requesting a hearing before an ALJ, General Medicine ultimately decided – due to extraordinary delays at the ALJ stage[2] – to bypass that level of review. It exercised its right to proceed directly to review by the MAC prior to, and without, ALJ review. *See* 42 U.S.C. § 1395ff(d)(3)(A) (providing that if an Administrative Law Judge does not render a decision within 90 days, that a party may escalate its appeal to the MAC).

---

[2] The statute governing General Medicine's administrative appeal required an ALJ to conduct a hearing on the appeal and issue a decision within 90 days. *See* 42 U.S.C. § 1395(d)(1)(A). However, a substantial backlog of cases has rendered compliance with that timeframe virtually impossible. *See, e.g., American Hospital Assoc. v. Price*, 867 F.3d 160, 163 (D.C. Cir. 2017) (noting that "[a]s of June 2, 2017, there was a backlog of 607,402 appeals awaiting review at [the ALJ] level" and that "some already-filed claims could take a decade or more to resolve"). General Medicine is justifiably frustrated by the unreasonably-long delays at the ALJ level.

The MAC issued a scheduling order on General Medicine's appeal on March 30, 2006. (*See* ECF #26-5.) In that order, the MAC informed General Medicine that while it would not hold a hearing on the appeal, General Medicine could submit a supplemental brief containing additional "written argument" in support of the appeal. (*Id.* at Pg. ID 5529.) The MAC made clear, however, that General Medicine could not submit additional evidence "without good cause":

> The [MAC's] extension of time and invitation to submit additional argument does not permit the appellant to submit additional evidence without good cause. As in all Medicare claims appeals, the appellant must establish good cause for submitting any new evidence concerning issues previously decided by the Qualified Independent Contractor (QIC). 42 C.F.R. § 405.1122(c). Examples of "evidence" include medical records, billing records; journal articles, and letters from treating physicians. Any "argument," such as briefs or letters from a party, is not "evidence" and the Council will consider all arguments submitted in compliance with this order.

(*Id.*)

General Medicine submitted a two-page supplemental brief to the MAC on April 26, 2017. (*See* ECF #26-6.) In that brief, General Medicine argued that there was "good cause" for the MAC to consider both (1) the medical records that it (General Medicine) had recently obtained from The Anderson and that it had not submitted to the QIC and (2) the ValueScope report. General Medicine explained that "it is at the mercy of the facility [where its patients live] to provide the requested [medical] records" and that in this case, it was only "able to obtain the complete

6

medical records for the beneficiaries in question" after the QIC "reached its partially favorable decision." (*Id.* at Pg. ID 5535-36.)

The MAC issued its decision on November 17, 2016. (*See* ECF #26-7.) The MAC first found that there was not "good cause" for General Medicine's failure to provide the newly-obtained medical records to the QIC. (*See id.* at Pg. ID 5542-44.) It therefore refused to consider those records when resolving General Medicine's administrative appeal. (*See id.*)

The MAC also said that it assigned "little probative weight" to the ValueScope report. (*Id.* at Pg. ID 5560.) But the MAC nonetheless did appear to address the arguments that ValueScope had raised, and it even agreed with some of those arguments. (*See* ECF #26-7 at Pg. ID 5557-60.) For instance, the MAC agreed with ValueScope that "the QIC misidentified the date of service in one case" and that "the QIC's determinations to deny some services for lack of a face to face examination are not well-founded." (*Id.* at Pg. ID 5560.) The MAC therefore did "allow coverage for those claims." (*Id.*) The MAC then reviewed each of the remaining claims in dispute, and it upheld most, but not all, of the QIC's decisions on those claims.

General Medicine timely sought review of the MAC's decision in this Court on January 11, 2017. (*See* ECF #1.)

## II

General Medicine filed its motion for summary judgment on October 30, 2017. (*See* ECF #26.) General Medicine seeks a remand of this action to the Secretary so that the Secretary may consider additional evidence supporting its billings – specifically, the medical records it received from The Anderson after the QIC issued its decision. (*See* General Medicine Supp. Br., ECF #32.)

General Medicine seeks a remand under what is commonly referred to as Sentence Six of 42 U.S.C. § 405(g). Pursuant to Sentence Six, the Court "may at any time order additional evidence to be taken before [the Secretary], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record at a prior proceeding." 42 U.S.C. § 405(g). Under this provision, the party seeking a remand has the burden to "show[] (i) that the evidence at issue is both 'new' and "material," and (ii) that there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Hollon ex rel. Hollon v. Comm'r of Social Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)).

## III

The Secretary argues that General Medicine is not entitled to a remand under Sentence Six of 42 U.S.C. § 405(g) because it has not shown that the evidence it seeks to introduce on remand – the medical records that it received from The

8

Anderson – is either "new" or "material." The Secretary further insists that General Medicine has failed to show "good cause" for failing to acquire and timely submit these records to the QIC. The Court agrees that the records are not "new" under Sentence Six. The Court will therefore deny General Medicine's motion for summary judgment.

Evidence is "new" for purposes of a remand under Sentence Six "only if it was not in existence or available to the claimant at the time of the administrative proceeding." *Hollon*, 447 F.3d at 484 (emphasis added). Here, the medical records that General Medicine obtained from The Anderson existed and were in General Medicine's possession during General Medicine's administrative proceedings. Indeed, General Medicine acknowledges that it received the records from The Anderson *before* it appealed the QIC's decision to the ALJ and that it provided those records to ValueScope (for review and analysis) before it requested a hearing before the ALJ. (*See* Prose Aff. at ¶27, ECF #32-1 at Pg. ID 5860.) Moreover, General Medicine offered to make those records available to the ALJ, and General Medicine provided the records to the MAC prior to the MAC's decision. (*See* Mot., ECF #26 at Pg. ID 5466-67.) Because the medical records that form the basis of General Medicine's request for a remand "clearly were in existence and available to [General Medicine] during the administrative proceedings," General Medicine is not entitled to a Sentence Six remand. *Hollon*, 447 F.3d at 484 (denying request for Sentence

9

Six remand and holding relevant medical records were not "new" where records were provided to Social Security Appeals Council); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002) (denying request for Sentence Six Remand and holding that information was not "new" because "it was available before the ALJ's decision"); *Blinkley v. Colvin*, 2016 WL 5372702, at *6 (M.D. Tenn. Sept. 26, 2016), *report and recommendation adopted at* 2017 WL 119567 (M.D. Tenn. Jan. 11, 2017) (holding that evidence was not "new" under Sentence Six and denying request for remand "because [the evidence] existed at the time of the proceedings" before the ALJ).

General Medicine counters that the medical records are new, and do support a remand under Sentence Six, because the "records were not available to [General Medicine] at the time of the initial determination, redetermination, or reconsideration by the QIC." (General Medicine Supp. Br., ECF #32 at Pg. ID 5849.) However, General Medicine's administrative proceedings did not end with the QIC's adjudication of General Medicine's appeal. As explained in detail above, after the QIC's decision, General Medicine sought an administrative hearing before an ALJ and then escalated its administrative appeal to the MAC. During both of those rounds of administrative review, General Medicine possessed the relevant medical records. General Medicine has not cited any case in which a court has found that evidence was "new" under Sentence Six where, as here, the claimant possessed

the evidence during its administrative appeals to both the ALJ and the MAC. General Medicine has therefore not persuaded the Court that the evidence it seeks to have the Secretary review on remand is new under Sentence Six.[3]

## IV

For all of the reasons stated above, General Medicine has not shown the evidence it seeks to introduce on remand is "new." General Medicine is therefore not entitled to a remand under Sentence Six of 28 U.S.C § 405(g). Accordingly, **IT IS HEREBY ORDERED** that General Medicine's motion for summary judgment (ECF #26) is **DENIED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: August 21, 2018

---

[3] The Secretary also argues that General Medicine has failed to show that (1) the newly-obtained medical records from The Anderson are "material" for purposes of a Sentence Six remand and (2) it (General Medicine) had "good cause" for failing to present those records to the QIC. However, because the Court concludes that the records are not "new" under Sentence Six, it need not determine whether General Medicine has established that the records are material and that it had good cause for not presenting the records to the QIC.

      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 21, 2018, by electronic means and/or ordinary mail.

                                            <u>s/Holly A. Monda</u>
                                            Case Manager
                                            (810) 341-9764